# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY GRANILLO, | 1:09-cv-00174-LJO-MJS (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| | [Doc. 1] |
| KEN CLARK, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.   BACKGROUND**[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his 1980 conviction in Tulare County Superior Court for second degree murder with use of a deadly weapon. (Pet. at 2, ECF No. 1.) Petitioner was sentenced to sixteen years to life. (Id.)

In the instant petition, Petitioner does not challenge the validity of his conviction; rather, he challenges the Board of Parole Hearings' (Board) April 24, 2007 decision finding him unsuitable for release on parole. Petitioner claims that his due process rights were violated because the Board's decision was not supported by evidence.

On May 15, 2008, Petitioner filed a state petition for writ of habeas corpus in the

---

[1] This information is taken from the state court documents attached to Respondent's answer and are not in dispute.

-1-

Tulare County superior Court challenging the Board's 2007 decision. (Answer, Ex. 1, ECF No. 12-1.) On June 5, 2008, the Superior Court denied the petition. (Answer, Ex. 2, ECF No. 12-6.) On June 14, 2008, Petitioner filed a state petition with the California Court of Appeals, Fifth Appellate District. (Answer, Ex. 5, ECF No. 12-12.) The petition was denied on September 4, 2008. (Id.)  Finally, Petitioner also filed a petition with the Supreme Court of California on September 9, 2008, and it was denied on October 29, 2008. (Id.)

Petitioner filed the instant petition for writ of habeas corpus on January 28, 2009. Respondent filed an answer to the petition on December 9, 2009, and Petitioner filed a traverse on February 1, 2010.

## II.   STATEMENT OF FACTS[2]

> On September 6, 1980, Visalia Police were dispatched to the area of 632 East Douglas, Visalia, regarding an assault. Upon arrival of Officer Henyon, he noticed a male Mexican adult lying in front of the step in the doorway at 632 East Douglas. The subject appeared to have multiple stab wounds in all areas of his upper body, with many being superficial and a number of wounds entered the body cavity up to three inches, causing significant damage. The death was caused by hyperbolemic shock due to multiple stab wounds. Additionally, the left lung, coupled with lacerations to the heart, contributed significantly to the death. The investigation into the murder continued on August 13, 1984.  Johnny Arnillias, age 24, provided a statement to the police regarding the crime. Arnillias indicated that he was at the residence of Connie Granillo, 1515 Northwest First Street, Visalia, California, on the evening of September 6, 1980. He indicates that Pisinelo "Peaches" Mendoza came to the residence at approximately 9:00 p.m. Mendoza came to the residence to see Connie, as she was the mother of his two children and he was her ex-boyfriend. Also present at the time was Freddie Sadillo. While at the Granillo residence, a conversation between Mendoza, Arnillas and Sadillo centered around the fact that Mendoza wanted protection from the brothers of Connie Granillo. Mendoza wanted Arnillas to talk to the Granillos and ask them to leave him alone. It would appear that Mendoza was being assaulted every time he was seen by the Granillo brothers.  While Mendoza and Arnilla were talking, Sadillo left. Shortly thereafter Mendoza thought he heard a noise inside the residence. Mendoza checked the residence, but located no one. Upon returning to the porch of the residence, Gary Granillo suddenly appeared from the residence, stabbing

---

[2] This information is taken from the 2007 Board hearing, which quoted from a deputy probation officer's report. (Pet., Ex. E, pp. 13-15.)

>Mendoza. Mendoza then began running from the area with Gary Granillo and his brothers, Daniel and Frank Ruiz in pursuit. Arnillas indicates that he and Sadilla followed to see what happened as they approached the area of Soroptimist Park in Visalia. Arnillas indicated that he observed that Mendoza had been caught by the three subjects and that Gary Granillo and Frank Ruiz were stabbing Mendoza. While Mendoza was being stabbed by Gary Granillo and Frank Ruiz, Daniel Granillo was kicking and stomping him. At this time, a vehicle driven by Debra Sims pulled up. The vehicle belonged to Gary Granillo, the vehicle she was driving in. Everybody including Arnillas and Sadillo, jumped in the vehicle and fled.

**DISCUSSION**

### A. Standard of Habeas Corpus Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the CDCR pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir. 2006), *overruled on other grounds by* Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010), *and citing* White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

Under the AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. 362, 375 n. 7, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication

of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see Lockyer v. Andrade, 538 U.S. 63, 70-71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). Accordingly, Petitioner bears the burden of demonstrating that the state court's decision was either contrary to or an unreasonable application of federal law Woodford v. Visciotti, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002); Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although "AEDPA does not require a federal habeas court to adopt any one methodology," there are certain principles which guide its application. Lockyer, 538 U.S. at 71.

First, the AEDPA establishes a "highly deferential standard for evaluating state-court rulings." Woodford, 537 U.S. at 24. Determinations of factual issues made by state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1). Accordingly, when assessing whether the law applied to a particular claim by a state court was contrary to or an unreasonable application of "clearly established federal law," a federal court must review the last reasoned state court decision. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004); Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If a state court summarily denies a claim, the court "looks through" the summary disposition to the last reasoned decision. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000); Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590 (1991), 115 L. Ed. 2d 706 (1991). Conversely, de novo review, rather than AEDPA's deferential standard, is applicable to a claim that the state court did not reach on the merits. Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

Second, the court must ascertain whether relevant federal law was "clearly established" at the time of the state court's decision. To make this determination, the Court may only consider the holdings, as opposed to dicta, of the U.S. Supreme Court. See

Williams v. Taylor, 529 U.S. at 412. In this context, Ninth Circuit precedent remains persuasive but not binding authority for purposes of determining whether a state court decision is an unreasonable application of Supreme Court Law. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

Third, the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meanings." Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). Under the "contrary to" clause, a federal court may grant a writ of habeas corpus only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams, 529 U.S. at 405. It is not necessary for the state court to cite or even to be aware of the controlling federal authorities "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

Under the "unreasonable application" clause, the court may grant relief "if the state court correctly identifies the governing legal principle…but unreasonably applies it to the facts of the particular case." Bell, 535 U.S. at 694; Williams, 529 U.S. at 407-08. As the Supreme Court has emphasized, a court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams, 529 U.S. at 411. Thus, the focus is on "whether the state court's application of clearly established federal law is objectively unreasonable." Bell, 535 U.S. at 694.

### B. Application of Due Process to California Parole

The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits state action that "deprive[s] a person of life, liberty or property without due process of law." U.S. CONST. amend. XIV, § 2. A person alleging a due process violation must demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not

constitutionally sufficient. Ky. Dep't Of Corrs. v. Thompson, 490 U.S. 454, 459-60, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002). A protected liberty interest may arise from either the Due Process Clause itself or from state laws. Bd. of Pardons v. Allen, 482 U.S. 369, 373, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987). In the context of parole, the United States Constitution does not, in and of itself, create a protected liberty interest in the receipt of a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21, 102 S. Ct. 31, 70 L. Ed. 2d 13 (1981). However, when a state's statutory parole scheme uses mandatory language, it "'creates a presumption that parole release will be granted' when or unless certain designated findings are made, thereby giving rise to a constitutional liberty interest." McQuillan, 306 F.3d at 901 (quoting Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 12, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979)).

Under California law, prisoners serving indeterminate prison sentences "may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement." In re Dannenberg, 34 Cal.4th 1061, 1078, 23 Cal. Rptr. 3d 417, 104 P.3d 783 (2005). Generally, one year prior to an inmate's minimum eligible parole release date, the Board will conduct a hearing to determine an inmate's parole release date "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public." In re Lawrence, 44 Cal.4th 1181, 1202, 82 Cal. Rptr. 3d 169, 190 P.3d 535 (2008) (citing Cal. Penal Code § 3041(a)). The Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration…." Id.; Cal. Penal Code § 3041(b). California state prisoners who have been sentenced to prison with the possibility of parole, therefore, have a clearly established, constitutionally protected liberty interest in receipt of a parole release date. Allen, 482 U.S. at 377-78 (quoting Greenholtz, 442 U.S. at 12); Irons v. Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006)).

During a parole proceeding, it is well established that inmates are not guaranteed the "full panoply of rights" afforded to criminal defendants under the Due Process Clause. See Pedro v. Or. Parole Bd., 825 F.2d 1396, 1398-99 (9th Cir. 1987). Nonetheless, inmates are afforded limited procedural protections. The Supreme Court has held that a parole board, at minimum, must give an inmate the opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. Hayward, 603 F.3d at 560. (quoting Greenholtz, 442 U.S. at 16). In addition, as a matter of state constitutional law, denial of parole to California inmates must be supported by "some evidence" demonstrating future dangerousness. Id. at 562 (citing In re Rosenkrantz, 29 Cal. 4th 616, 128 Cal. Rptr. 2d 104, 59 P.3d 174 (2002)); see also In re Lawrence, 44 Cal.4th 1181, 1191, 82 Cal. Rptr. 3d 169, 190 P.3d 535 (2008) (recognizing the denial of parole must be supported by "some evidence" that an inmate "poses a current risk to public safety"); In re Shaputis, 44 Cal.4th 1241, 1254, 82 Cal. Rptr. 3d 213, 190 P.3d 573 (2008) (same). "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of [the] state," and compliance with this evidentiary standard is, therefore, mandated by the federal Due Process Clause. Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010), Pearson v. Muntz, 606 F.3d 606, 610-11(9th Cir. 2010). Thus, a federal court undertaking review of a "California judicial decision approving the…decision rejecting parole" must determine whether the state court's decision "was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Hayward, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(2)).

**C.    California Law Regarding Parole**

A court's "some evidence" analysis "is shaped by the state regulatory, statutory, and constitutional law that governs parole suitability determinations in California. Pirtle v. Cal. Bd. of Prison Terms, No. 07-16097, slip op., 2010 U.S. App. LEXIS 14205, *11 (9th Cir. July 12, 2010). In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) <u>General</u>. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) <u>Information Considered</u>. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2281(a)-(b), 2402, 2422, 2432. Section 2281(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) <u>Commitment Offense</u>. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>> (C) The victim was abused, defiled or mutilated during or after the offense.
>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) <u>Previous Record of Violence</u>. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) <u>Unstable Social History</u>. The prisoner has a history of

> unstable or tumultuous relationships with others.'
>
> (4) <u>Sadistic Sexual Offenses</u>. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) <u>Psychological Factors</u>. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) <u>Institutional Behavior</u>. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2281(c)(1)-(6).

On the other hand, Section 2281(d) sets forth the circumstances tending to show suitability which include:

> (1) <u>No Juvenile Record</u>. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
>
> (2) <u>Stable Social History</u>. The prisoner has experienced reasonably stable relationships with others.
>
> (3) <u>Signs of Remorse</u>. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
>
> (4) <u>Motivation for Crime</u>. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period
>
> (5) <u>Battered Woman Syndrome</u>. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.
>
> (6) <u>Lack of Criminal History</u>. The prisoner lacks any significant history of violent crime.
>
> (7) <u>Age</u>. The prisoner's present age reduces the probability of recidivism.
>
> (8) <u>Understanding and Plans for Future</u>. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.
>
> (9) <u>Institutional Behavior</u>. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2281(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various

procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th at 665.

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 2010 WL 2108964, at *4. Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall, 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608-609.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition,

> the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public.

In re Lawrence, 44 Cal. 4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560). Thus, under California law, the standard of review is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates that a inmate's release would unreasonably endanger public safety. In re Shaputis, 44 Cal.4th at 1254.

### D.     Analysis of State Law Parole Determination

As stated above, Petitioner filed petitions for writ of habeas corpus to the Tulare County Superior Court, the California Court of Appeals, and the California Supreme Court. The Court of Appeals and the Supreme Court summarily denied the petition. Accordingly, this Court must review the last reasoned decision, in this case that of the Tulare County Superior Court to determine if there was some evidence indicates that a inmate's release would unreasonably endanger public safety.

####     1.     Relevant Facts Recited by the Superior Court

The Superior Court cited to several portions of the Board decision in deciding that there was some evidence of Petitioner's current dangerousness. The Court relied upon factors including, but not limited to: (1) the fact that the commitment offense was committed in a cruel and callous manner, (2) Petitioner's violent criminal conduct committed before the commitment offense, and (3) Petitioner's unfavorable psychological report.

#####         a.     Commitment Offense

       The Board relied primarily on the commitment offense in finding Petitioner posed a current risk of danger to the public safety. (Tr. Parole Hearing at 56-57.) The California Supreme Court has found that while "the Board or the Governor may base a denial-of-parole decision upon the circumstances of the offense, or upon other immutable facts such as an inmate's criminal history . . . some evidence will support such reliance only if those facts support the ultimate conclusion that an inmate continues to pose an unreasonable risk to public safety." In re Lawrence, 44 Cal. 4th at 1221. The parole board described the commitment offense as being "carried out in an especially cruel and callous manner," "carried out in a dispassionate and calculated manner" and "demonstrates exceptional disregard for human suffering." (Tr. Parole Hearing at 56-57.)  The California Supreme Court has noted that the Board uses similar language in practically every decision denying parole. In re Lawrence, 44 Cal. 4th at 1206 ("[T]he practical reality [is] that in every published judicial opinion addressing the issue, the decision of the Board or the Governor to deny or reverse a grant of parole has been founded in part or in whole upon a finding that the inmate committed the offense in an "especially heinous, atrocious or cruel manner.") Furthermore, the "focus upon whether a petitioner's crime was "particularly egregious" in comparison to other [crimes] in other cases is not called for by the statutes, which contemplate an individualized assessment of an inmate's suitability for parole, nor is it a proper method of assessing whether "some evidence" supports the Governor's conclusion that a particular inmate represents an unreasonable threat to public safety. In re Lawrence, 44 Cal. 4th at 1217.

       Here, the Board substantiates claims of egregious conduct during the commitment offense. The Board notes that Petitioner chased the unarmed victim, who was attempting to run away, a significant distance and then with an accomplice stabbed the victim 52 times. (Tr. Parole Hearing at 56-57.)  After stabbing the victim, Petitioner left the victim to die in a public park. (Id.) The commitment offense was committed in an extremely violent manner. As such, the Board identified characteristics of the murder that, on a comparative basis, made the action especially cruel and callous. See, e.g. Pirtle, 2010 U.S. App. LEXIS

14205 at *14-16.

### b. Prior Record

The Board also relied on Petitioner's pre-incarceration criminal history to deny him parole. (Tr. Parole Hearing at 57.) Petitioner's prior record includes a conviction for assault with a deadly weapon for a prior stabbing during a school altercation. (Id. at 29.) Pursuant to California regulations, a previous record of violence is a circumstance tending to show parole unsuitability. See Cal. Code Regs. tit. 15, § 2402(c)(2). Petitioner's prior record does reflect a patter of violent behavior and is therefore probative of his present danger to society.

### c. Psychological Report

The Board relied on the psychological report in its decision denying Petitioner parole. (Tr. Parole Hearing at 58.) The March 2007 psychological report found that Petitioner was at a greater risk for future violence in the community than the average citizen. (Psychological Rept. at 3-4.) The report further states that Petitioner has not thought much about the events of the commitment offense, and continues to blame the victim. (Id.) Petitioner believes that the events of the commitment offense could have been prevented if the victim changed his behavior, but at no time acknowledges that Petitioner's own behavior could have prevented the murder. (Id.) Further, the Petitioner has never indicated any empathy for the victim. (Id.) The Board's finding that the physiological report was unfavorable was supported by some evidence; the report suggests that Petitioner poses a current risk of danger to the public safety.

## III. CONCLUSION

Based on the foregoing, there is some evidence to support the Board's decision finding Petitioner an unreasonable risk to public safety if released. The state superior court's decision upholding the Board's decision was not an unreasonable determination of the some evidence standard, nor an unreasonable determination of the facts in light of the evidence.

## IV. RECOMMENDATION

-13-

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   September 6, 2010             /s/ *Michael J. Seng*
                                       UNITED STATES MAGISTRATE JUDGE